UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MEGUMI CHICK,

          Plaintiff,

    vs.

VIBRA SPECIALTY HOSPITAL OF PORTLAND, LLC, a Delaware Limited Liability Company,  VIBRA HEALTHCARE, LLC, a Delaware Limited Liability Company,

          Defendants.

No. 3:26-cv-00669

COMPLAINT FOR UNPAID WAGES

JURY DEMAND

## I.    PARTIES

1.1    Plaintiff MEGUMI CHICK resides in the State of Washington, in Clark County, and at all material times relevant to this Complaint worked in the State of Oregon, in Multnomah County.

1.2    VIBRA SPECIALTY HOSPITAL OF PORTLAND, LLC ("Vibra Specialty Hospital of Portland"), is a Delaware Limited Liability Company, that at all times material to this Complaint operated a specialty hospital in Portland, Oregon, in Multnomah County.

COMPLAINT  1

1.3     VIBRA HEALTHCARE, LLC ("Vibra Healthcare"), is a Delaware Limited Liability Company, that at all times material to this Complaint operated a specialty hospital in Portland, Oregon, in Multnomah County.

## II.    JURISIDCTION, VENUE AND TIMELINESS

2.1     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Fair Labor Standards Act and the Equal Pay Act, and pursuant to 28 U.S.C. § 1367, because this Court has supplemental jurisdiction over Plaintiff's state law claims as they form part of the same case or controversy as Plaintiff's federal claims.

2.2     This Court has personal jurisdiction over  VIBRA SPECIALTY HOSPITAL OF PORTLAND, LLC, because it was operating a specialty hospital Portland, Oregon, at 10300 NE Hancock St, Portland, OR 97220, and was Plaintiff's employer at all times relevant to this lawsuit, and Plaintiff's claims arise from or relates to those contacts.

2.3     This Court has personal jurisdiction over VIBRA HEALTHCARE, LLC, because it was operating a specialty hospital in Portland, Oregon, at 10300 NE Hancock St, Portland, OR 97220, and was Plaintiff's employer at all times relevant to this lawsuit, and Plaintiff's claims arise from or relates to those contacts.

2.4     Venue is appropriate under 28 U.S.C. § 1391 because defendants employed Plaintiff in Portland, Oregon, where they operated a specialty hospital, and the events or omissions giving rise to the claims occurred in this district.

2.5     This action is timely filed under 29 USCS § 255(a), ORS § 12.080, ORS § 12.110, ORS § 12.110, and ORS § 652.230.

COMPLAINT  2

### III.    FACTS

3.1    Plaintiff began working for Defendants on May 17, 2021, as a registered nurse at Vibra Specialty Hospital of Portland, located at 10300 NE Hancock St, Portland, OR 97220.

3.2    Vibra Healthcare is a national specialty healthcare provider dedicated to creating, developing, and acquiring medical rehabilitation hospitals and critical care hospitals, including Vibra Specialty Hospital of Portland.  Defendants Vibra Specialty Hospital of Portland and Vibra Healthcare are joint employers of Plaintiff.

3.3    Vibra Healthcare advertised and promoted Vibra Specialty Hospital of Portland on its website and controlled its operations, including employment policies and practices.

3.4    At the time Plaintiff was hired by Defendants in 2021, she had 10 years of experience as a registered nurse. Plaintiff worked both regular hours and overtime hours for Defendants, often working more than 40 hours per workweek and more than 80 hours over 14-day, two week period.

3.5    When first hired, Plaintiff was paid a base hourly rate of $38.39 per hour, which was increased to $42.91 per hour on September 12, 2021, and then was increased again to $45.91 on January 1, 2023, which is where the base rate remained for almost 18 months.   Since Plaintiff was hired she was being paid far less than the registered nurse salary rate she was entitled to, based on her years of experience and Defendants' salary schedule, and less than male colleagues who held the same position and had the same or similar job responsibilities.

3.6    Plaintiff is female. In or around August 2024, Plaintiff was training a new registered nurse, who is a man and has much less experience than Plaintiff.  During that time, the male nurse trainee informed Plaintiff that he was being paid at a rate of $50 per hour, which

COMPLAINT  3

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

was much higher than the base rate Defendants had been paying Plaintiff.  Plaintiff was surprised to learn that she was being paid much less than a male colleague, who had less experience and fewer years as a registered nurse than Plaintiff.  Plaintiff did not authorize Defendants to make deductions from her paycheck.

3.7     For years, Plaintiff was not paid for work she performed on her scheduled breaks.  Defendants required Plaintiff to take a mandatory thirty-minute break per shift.  Although Defendants required Plaintiff to "clock out" for thirty minutes, Defendants understaffed the Vibra Specialty Hospital of Portland and Plaintiff routinely did not take her full thirty-minute break, but rather continued working and/or returned from break early to take care of Defendants' patients that were in her care.  Because Defendants did not allow Plaintiff to clock back in and record hours working during a scheduled break, Plaintiff was unpaid for time she worked on almost every shift.  Plaintiff's supervisors were aware that she and other nurses were working without pay during scheduled breaks.

3.8     On or around August 28, 2024, Plaintiff summitted her resignation to Vibra's Director of Nursing ("DON") and gave her a written resignation letter, setting a resignation date of September 13, 2024.  The DON asked whether Plaintiff's pay was the reason Plaintiff was resigning, and Plaintiff confirmed that she was concerned about being underpaid.  That same day, Plaintiff and the DON went to the Human Resources Department and spoke with Defendants' Human Resources Director, Frederick Spreng, who told Plaintiff that she was supposed to be paid over $50 per hour.  Spreng told Plaintiff that he would make sure Plaintiff received retro pay for the amounts past due.  Spreng and the DON promised Plaintiff she would be paid the wages she was owed.

COMPLAINT  4

3.9    Frederick Spreng confirmed that Plaintiff had been paid at an incorrect rate and assured Plaintiff she would be compensated retroactively for all amounts due.  Spreng acknowledged that Plaintiff was underpaid.

3.10    On August 28, 2024, Frederick Spreng wrote the following in an email to Plaintiff: "*You should be at 54.87 at this moment from your last pay raise which would have been at 5/05/2024. The previous May you should been set 53.97 and 52.74 prior to that.*
*I will put in PAFS to fix that. What we would like to do is restart your retention bonus for 15,000 and enroll you in the clinical ladder program. It breaks down like this: After 90 days you be at 55.97, then 6 months- 58.20 for base rate. With the retention bonus, breaks down to 4 dollars an hour, this would 59.97 and then 62.20 respectively for staying full time.*"

3.11    After her wage rate was updated in UltiPro, which is Defendant Vibra Healthcare's payroll portal, Plaintiff learned her true pay rate was $55.33 as of May 7, 2023, and her base pay increased to $56.44 as of May 5, 2024.  According to Vibra Healthcare's pay rate structure, based on years of experience, Plaintiff was entitled to be paid more than $50 per hour before May 2023.  Plaintiff was underpaid for years.

3.12    By promising he would put in a PFAS and fix the situation, Frederick Spreng induced Plaintiff to continue working at Vibra Specialty Hospital of Portland. Plaintiff relied on Defendant Spreng's promise that he would put in a PFAS and fix the situation.  Plaintiff continued working at Vibra Specialty Hospital of Portland, based on the promise she would receive the wages she was owed for work performed.  Defendants' promise, made through Defendants' agent/officer Spreng, that Plaintiff would be paid wages owed was consideration for Plaintiff's agreement to continue working for Defendants.

COMPLAINT  5

3.13    Defendants are vicariously liable for Spreng's contractual agreement, promises, actions and inactions, as he was acting within the scope and course of his employment as the Human Resources Director for Defendants at the Vibra Specialty Hospital of Portland.

3.14    Defendants did not fix the situation, did not fulfill their obligations, and Plaintiff was not paid the wages she was entitled to, including regular wages and overtime wages. Plaintiff also was not paid the rate she was owed for earned PTO.

3.15    On September 13, 2024, Plaintiff received "retro pay" in the amount of $720.39. This amount was far less that what Defendants owed Plaintiff for retro pay, for hours she worked from her start date in May 2021 through 2025.  The $720.39 payment represents a tiny fraction of the amount Plaintiff was and continues to be owed for unpaid wages.

3.16    On November 24, 2024, Plaintiff emailed Frederick Spreng and asked when she would receive the backpay Defendants owe her.  Plaintiff did not hear back from Spreng or any other agent, employee, or officer of Defendants.

3.17    In or around February 2025, Plaintiff went into Defendants' Human Resources Office at the Virba Specialty Hospital of Portland and spoke with Spreng.  Plaintiff asked Spreng when she would receive her retro pay.  Spreng apologized, said he was busy and that is why the payment had not been issued, but again promised that he would fix it and Plaintiff would be paid the amount due.

3.18    On March 4, 2025, Plaintiff emailed Spreng again. Plaintiff wrote: "*Despite multiple reminders, the payments are still pending. I have consistently fulfilled my job responsibilities and kindly ask for an update on the status and timeline for disbursement. Thank you for your prompt attention to this matter.*"  Spreng did not reply.

COMPLAINT  6

3.19    On April 2, 2025, Plaintiff emailed Spreng again, requesting release of her unpaid salary.  Spreng did not reply.

3.20    On April 28, 2025, Plaintiff emailed Spreng again, requesting release of her unpaid salary.  Spreng did not reply.

3.21    On April 28, 2025, Plaintiff also complained to the Oregon BOLI about not receiving her wages.

3.22    On May 2, 2025, Plaintiff emailed Spreng again, and requested that Defendants release of her unpaid salary.  Spreng did not reply.

3.23    On June 4, 2025, Plaintiff emailed Spreng yet again, this time writing: "*I am following up regarding the status of my unpaid salary for the period of May 7, 2023, to May 4, 2024. I would appreciate the opportunity to meet with you to discuss this matter. Please let me know a few times that work for you at your earliest convenience.  If a meeting is not possible, I kindly request an update on this issue via email by June 10.*"  Spreng did not respond.

3.24    On July 9, 2025, Plaintiff emailed Spreng again, writing: "*I am writing to follow up once again on the issue of unpaid wages for the period between May 7, 2023, and August 24, 2024, during my full-time employment at Vibra Hospital.  Despite multiple emails sent previously, I have received no response or resolution from HR.  As discussed with Rebecca Sullivan, the former DON, and HR Rick when I submitted my resignation in August 2024, I agreed to stay in an PRN position under the condition that:*

*My retroactive pay from May 7, 2023, onward would be reviewed and paid accordingly, and I would work two shifts per month. Based on this agreement, I withdrew my resignation and continued to serve in the PRN role. However, the following issues have now occurred: No*

COMPLAINT  7

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

*retroactive wages have been paid to date, nor has there been any update from HR. I was recently informed via text by Kathy that the minimum PRN schedule requirement has changed from 2 to 3 shifts per month, effective July 1, without any prior notice or communication from HR. This situation has become both unprofessional and untenable. I have made multiple good-faith efforts to clarify and resolve these matters, and yet my inquiries have been consistently ignored."*

3.25    On July 10, 2025, Spreng finally responded to Plaintiff by email, once again promising Plaintiff would be paid the wages she is owed: *"I will find out why this has not been done yet and I will get you a time frame as to what and when it will be done. You will be paid the back pay you are owed."*

3.26    On July 19, 2025, Plaintiff emailed Spreng, thanking him for his response and for acknowledging the issue regarding her back pay.  She also wrote: *"I appreciate your willingness to resolve the matter and you're understanding. As mentioned, I would be very grateful if you could provide a clear time frame on when and how the outstanding payments will be made."*

3.27    Spreng never responded to Plaintiff's July 19, 2025, email. No other agent, employee, or officer of Defendants responded.  Plaintiff was not paid the wages she is owed, which Defendants, through Spreng, acknowledged she is owed.

3.28    On or about December 1, 2025, Plaintiff received a WARN notice that Vibra Specialty Hospital of Portland would close on February 1, 2026.  Plaintiff emailed Spreng again on January 5, 2026, requesting an update regarding the unsolved issue of unpaid wages.  Neither Spreng, or any other employee, officer, or agent of the Defendants replied.

COMPLAINT  8

3.29    Defendants closed the Vibra Specialty Hospital of Portland on February 1, 2026. Despite acknowledging that Plaintiff is owed wages as far back as May 2023, and promising on multiple occasions that she would be paid the wages she is owed, Defendants did not pay Plaintiff the wages due at termination.  From the time Plaintiff discovered in August 2024 that she was paid less than a male colleague and less that she was owed, up until termination in February 2026, Plaintiff relied on Defendants' promises that they would "fix" their violations and she would receive retro pay for the amounts she was owed and would be made whole.

3.30    Defendants were notified of Plaintiff's claim for unpaid wages before this action was filed.  Defendants have refused to pay Plaintiff the wages Defendants owe Plaintiff for work she performed, which Spreng repeatedly promised would be paid.

3.31    To date, Plaintiff has not been paid the wages she is owed by Defendants.

## IV.    COUNT 1:  VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA") - OVERTIME COMPENSATION

4.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 3.31 as if fully set forth herein.

4.2    Defendants, at all material times, engaged in interstate commerce or in the production of goods for commerce, by operating specialty hospitals, buying goods and services, and advertising their businesses and services across the internet, among other things.

4.3    Defendants were Plaintiff's employer within the meaning of 29 U.S.C. § 203(d) because Defendants acted directly or indirectly in the interest of operating a specialty hospital in Portland, Oregon, in relation to Plaintiff, as an employee.

COMPLAINT  9

4.4     Defendants Vibra Specialty Hospital of Portland and Vibra Healthcare are joint employers of Plaintiff.

4.5     Plaintiff was a non-exempt employee under the FLSA and worked as a certified nurse on an hourly basis for Defendants.

4.6     Plaintiff performed work for Defendants at Vibra Specialty Hospital in Portland.

4.7     Under section 7(j) of the FLSA, Defendants utilized a fixed work period of fourteen consecutive days in lieu of the 40-hour workweek for the purpose of computing overtime. Defendants were required to pay Plaintiff time and one-half the regular rate for all hours worked over eight in any workday and eighty hours in the fourteen-day period. Alternatively, under section 7(a) of the FLSA, Defendants were required to pay Plaintiff one-half the regular rate for all hours worked over forty hours in one workweek.

4.8     Defendants did not pay Plaintiff time and one-half the regular rate for all hours worked over eight in any workday and eighty hours in the fourteen-day period.

4.9     Defendants did not pay Plaintiff time and one-half the regular rate for all hours worked over forty hours in one week.

4.10    Defendant failed to pay Plaintiff overtime compensation at one and one-half times Plaintiff's regular rate of pay for hours worked in excess of 40 hours per workweek and/or 80 hours per work period as required by Fair Labor Standards Act.

4.11    Plaintiff was not paid overtime at a rate of at least one- and one-half times her regular rate from May 17, 2021, until the present, with unpaid overtime compensation due from May 2023 through August 2024, the exact amount which will be proven after discovery and trial.

COMPLAINT  10

4.12    Defendants' violations were willful in that Defendants knew or showed reckless disregard for whether its conduct violated the Fair Labor Standards Act.

4.13    As a result of Defendant's violations, Plaintiff has suffered damages in the form of unpaid overtime wages and is entitled to recovery.

## V.    COUNT II: VIOLATION OF OREGON WAGE AND HOUR LAW - OVERTIME COMPENSATION (ORS § 653.055 & ORS § 653.261)

5.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 4.13 as if fully set forth herein.

5.2    Plaintiff was employed by Defendants at all times material to this Complaint and Defendants were her Employer as defined under ORS § 653.010.

5.3    From May 17, 2021 through August 24, 2024, Plaintiff worked both regular and overtime hours for Defendants.

5.4    At all times from May 17, 2021, through August 24, 2024, Plaintiff was not paid for overtime hours worked at a rate of at least one and one-half times the regular rate at which Plaintiff was employed, as required under OAR 839-020-0125 and ORS § 653.261.

5.5     As a result of Defendant's violations, Plaintiff has suffered damages in the form of unpaid overtime wages and is entitled to recovery.

## VI.    COUNT III: VIOLATION OF OREGON WAGE AND HOUR LAW – UNAUTHORIZED DEDUCTIONS (ORS § 652.615 & ORS § 652.610)

6.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 5.5 as if fully set forth herein.

6.2    Since May 2021 under her employment separation from Vibra Specialty Hospital of Portland and Vibra Healthcare, Plaintiff was not compensated at the hourly rate she was

COMPLAINT  11

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

entitled to per her agreement with Defendants and according to Defendants' employee pay rate schedule.

6.3    Defendants are not permitted to deduct or withhold any portion of an employee's wages without authorization.

6.4    Defendants withheld a substantial portion of Plaintiff's wages without her permission or authorization, in violation of ORS § 652.610.

6.5    As a result of Defendant's violations, Plaintiff has suffered damages in the form of unpaid wages, including regular wages, overtime wages, and earned PTO, and is entitled to recovery.

## VII.    COUNT IV: VIOLATION OF OREGON WAGE AND HOUR LAW – FAILURE TO PAY WAGES OWED UPON TERMINATION (ORS § 652.140 & ORS § 652.150)

7.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 6.5 as if fully set forth herein.

7.2    Plaintiff's employment for Defendants at the Vibra Specialty Hospital of Portland terminated on or before February 1, 2026.

7.3    Defendants did not pay Plaintiff wages she is owed, which Defendants admitted and acknowledged she was owed in August 2024 and many times after that date.

7.4    Defendants violated ORS § 652.140, since they did not pay Plaintiff by the end of the first business day after the employment termination.

7.5    To date, Plaintiff has not been paid wages she is owed by Defendants.

COMPLAINT  12

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

7.6   As a result of Defendants' violation of ORS § 652.140, Plaintiff has suffered damages in the form of unpaid wages, including regular wages overtime wages, and is entitled to recovery.

7.7   Defendants' violation of ORS § 652.140 was willful and Plaintiff is entitled to penalties under ORS § 652.150.

## VIII.   COUNT V: FAILURE TO PAY WAGES UNDER FLSA (29 USC § 216, 29 USC § 206 & 29 USC § 207)

8.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 7.7 as if fully set forth herein.

8.2    Defendants, as Plaintiff's joint employers, did not provide bona fide meal periods to Plaintiff when she worked shifts of 12-hours or more.

8.3    When Plaitiff worked shifts for Defendants from May 17, 2021, up until her last shift working for Defendants, Plaintiff was not completely relieved from duty for the purposes of eating regular meals.

8.4   At all relevant times, Plaintiff's meal breaks were less than 30 minutes long.

8.5   Defendants required Plaintiff to clock off work and/or not record her work time for 30 minutes per 12-hour shift, even though she worked through most or all of the 30-minute "break" period.

8.6    Plaintiff was not relieved from work because she was required to perform duties while on scheduled breaks.

COMPLAINT  13

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

8.7    On some occasions, the extra 30 minute shifts worked by Plaintiff constituted overtime hours, and she was entitled to be paid at a rate of least time and one half of her regular rate for her work.

8.8    Defendants failed to pay Plaintiff wages during scheduled breaks when she was working, as required under 29 USC § 206 and 29 USC § 207.

8.9    Defendants actions were willful because they knew or showed reckless disregard for whether their conduct violated the FLSA.

8.10    As a result of Defendant's violations, Plaintiff has suffered damages in the form of unpaid wages, including regular wages and overtime wages, and is entitled to recovery.

## IX.    COUNT VI:    VIOLATION OF OREGON WAGE AND HOUR LAW – FAILURE TO PAY WAGES FOR SHORTENED MEALTIMES (ORS § 653.055)

9.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 8.10 as if fully set forth herein.

9.2    Defendants routinely failed to pay Plaintiff wages owed for shortened meal periods.

9.3    Under OAR 839-020-0050, Plaintiff must be paid for any and all meal periods during which she was not completely relieved of all duties.

9.4    Plaintiff must be paid for all scheduled breaks, during which she performed work for Defendants.

COMPLAINT  14

9.5     Defendants must pay for an entire 30-minute meal period since Plaintiff did not take the full break.

9.6     Defendants did not pay Plaintiff for breaks that were under 30 minutes at all times when she worked for Defendants.

9.7     Plaintiffs' supervisors knew that Plaintiff was not able to take the 30-minute breaks and was returning from her breaks early to take care of patients, yet Defendants did not pay her for her time.

9.8     Defendants did not pay Plaintiff the wages to which the Plaintiff is entitled, but rather made her "clock out" for thirty minutes despite the fact that she routinely worked through breaks**.**

9.9     As a result of Defendant's violations, Plaintiff has suffered damages in the form of unpaid wages, including regular wages and overtime wages, and is entitled to recovery.

## X.     COUNT VII: VIOLATION OF THE FEDERAL EQUAL PAY ACT (29 U.S.C. § 206(d))

10.1     Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 9.9 as if fully set forth herein.

10.2     Plaintiff is female.

10.3     Plaintiff and one or more employees of the opposite sex performed comparable work as certified nurses for Defendants.

COMPLAINT  15

10.4   Plaintiff and one or more male colleagues performed comparable work in terms of skill, effort, responsibility, and working conditions in that they were registered nurses and took care of the same number of patients with the same or similar medical needs.

10.5   The work of Plaintiff and her male colleagues was performed in the same establishment, Vibra Specialty Hospital in Portland.

10.6   Defendants paid Plaintiff less than the comparator employee(s) of the opposite sex.

10.7   When first hired in May 2021, Plaintiff was paid a base hourly rate of $38.39 per hour, which was increased to $42.91 per hour on September 12, 2021, and then was increased again to $45.91 on January 1, 2023, which is where the base rate remained until around August 24, 2024.  Conversely, Defendants paid a male comparator with less experience than Plaintiff, whom Plaintiff was training as a new employee, more than $50 per hour during and before August 2024.

10.8   Defendants cannot establish that the wage differential was based on a bona fide seniority system, a bona fide merit system, a system that measures earnings by quantity or quality of production, or a bona fide factor other than sex.

10.9   When Plaintiff discovered a male colleague with less experience was being paid more than Plaintiff for the equal work on a job the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, she

COMPLAINT  16

submitted her resignation to Defendants.  At that time, Defendants' principal and/or officer, HR Director Spreng, promised Plaintiff that she would be paid the full wages Plaintiff was owed, consistent with the male colleague.

10.10    On February 1, 2026, Defendants closed operations at the Vibra Specialty Hospital in Portland.  Plaintiff was not paid the back wages she had been promised by Defendants, through Spreng, which back wages would have brought her pay equal to male colleagues.  Instead, Plaintiff learned that the promise would not be fulfilled, and Defendants would not pay her at a rate equal to male comparators.

10.11    Defendants' actions were willful because they knew or showed reckless disregard for whether their conduct violated the FLSA.

10.12    As a result of Defendant's violations, Plaintiff has suffered damages and is entitled to recovery pursuant to 29 USC § 216 and 29 USC § 206(d).

**XI.    COUNT VIII: VIOLATION OF OREGON EQUAL PAY LAW (ORS § 652.220 & ORS § 652.230)**

11.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 10.12 as if fully set forth herein.

11.2    Plaintiff is female.

11.3    Plaintiff and one or more employees of the opposite sex performed comparable work as certified nurses for Defendants.

COMPLAINT  17

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

11.4    Plaintiff and one or more male colleagues performed comparable work in terms of skill, effort, responsibility, and working conditions in that they were registered nurses and took care of the same number of patients with the same or similar medical needs.

11.5    The work of Plaintiff and her male colleagues was performed in the same establishment, Vibra Specialty Hospital in Portland.

11.6    Defendants paid Plaintiff less than the comparator employee(s) of the opposite sex.

11.7    When first hired in May 2021, Plaintiff was paid a base hourly rate of $38.39 per hour, which was increased to $42.91 per hour on September 12, 2021, and then was increased again to $45.91 on January 1, 2023, which is where the base rate remained until around August 24, 2024.  Conversely, Defendants paid a male comparator with less experience than Plaintiff, whom Plaintiff was training as a new employee, more than $50 per hour during and before August 2024.

11.8    When Plaintiff discovered a male colleague with less experience was being paid more than Plaintiff for the equal work on a job the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, she submitted her resignation to Defendants.  At that time, Defendants' principal and/or officer, HR Director Spreng, promised Plaintiff that she would be paid the full wages Plaintiff was owed, consistent with the male colleague.

COMPLAINT  18

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

11.9    On February 1, 2026, Defendants closed operations at the Vibra Specialty Hospital in Portland.  Plaintiff was not paid the back wages she had been promised by Defendants, through Spreng, which back wages would have brought her pay equal to male colleagues.

11.10    Defendants engaged in fraud, acted with malice or acted with willful and wanton misconduct when they failed to pay Plaintiff the retro pay Spreng had promised, which pay would have compensated for the wages she was due and brought her pay equal to that of male colleagues performing the same or similar work.

11.11    An unlawful and discriminatory compensation practice occurred on February 1, 2026, or within one business day following February 1, 2026, when the promise to make Plaintiff whole by paying back wages was broken and Plaintiff was not provided a final paycheck with the retro pay, as promised.

11.12   Defendant cannot establish that the wage differential was based on a bona fide seniority system, a bona fide merit system, a system that measures earnings by quantity or quality of production, or a bona fide factor other than sex.

11.13 As a result of Defendant's violations of ORS § 652.220 and ORS § 652.230, Plaintiff has suffered damages and is entitled to recovery, including punitive damages under ORS § 659A.885.

### XII.    COUNT IX: BREACH OF CONTRACT- PROMISORY ESTOPPEL

COMPLAINT  19

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

12.1    Plaintiff repeats and realleges the allegations set forth in paragraphs 1.1 through 11.13 as if fully set forth herein.

12.2    In or about August 2024, Defendants, through Spreng, promised Plaintiff she would be paid regular wages, overtime wages, and PTO payments, which she had earned and was entitled to be paid by Defendants.

12.3    On multiple occasions, Spreng promised Plaintiff he would "fix" the under payment and Plaintiff would be paid the amounts she was due, in exchange and as consideration for Plaintiff's agreement to withdraw her resignation and continuing working for Defendants.

12.4    Plaintiff relied on Spreng's promise, withdrew her resignation, and continued working for Defendants on reliance on the promise.

12.5    Spreng, as a reasonable person, foresaw that the promise would induce reliance by Plaintiff.

12.6    Spreng was acting on behalf of Defendants and his actions and promises were made within the course and scope of their employment.  Defendants are vicariously liable for the acts of Spreng.

12.7    Plaintiff's reliance on the promise resulted in a substantial change in her position, such that she did not pursue other action to enforce her rights to payment earlier, lost the present value of the money owed, and continued working for Defendants when she otherwise would have resigned.

12.8    As a result of Defendants' promise and breach, Plaintiff has suffered damages and is entitled to recovery of the unpaid wages he promised she would be paid.

COMPLAINT  20

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

## XIII.  PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and award Plaintiff monetary damages, against all Defendants as follows:

A.    Unpaid wages owed for work performed from May 7, 2023, through August 24, 2024, including regular pay and overtime compensation, in the amount of $27,621.32;

B.    Unpaid wages owed for work performed from May 17, 2021, through May 7, 2023, including regular pay and overtime compensation, the exact amount to be determined at trial;

C.    Liquidated damages of $27,621.32 under ORS 652.230;

D.    Liquidated damages against all defendants in an amount equal to the unpaid wages pursuant to for violations of the Fair Labor Standards Act and the Equal Pay Act, the exact amount to be determined at trial;

E.    Civil penalties pursuant to and for violations of Oregon wage and hour law, including $15,000 in penalty wages under ORS 652.150 for failure to pay wages upon termination of employment;

F.    An amount of at least $10,000, for scheduled mealtimes when Plaintiff worked but was not paid, the exact amount to be determined at trial;

G.    Punitive damages under ORS § 659A.885, the exact amount to be determined at trial;

H.    Reasonable attorney's fees and costs against all Defendants;

I.    Pre-judgment and post-judgment interest against all Defendants at the applicable legal rate; and

COMPLAINT  21

BAYNARD COOKE LAW PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

J.      Such other relief as the Court deems just and proper.

## XIV.  JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED on April 3, 2026

By:_____/s/ Sara Baynard-Cooke_____
Sara Baynard-Cooke, OSB # 254394

Baynard Cooke Law PLLC
1014 Franklin Street, Ste 204
Vancouver, WA 98660
sara@baynardcooke.com
(360) 768-5930

COMPLAINT  22